IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVOCET SPORTS TECHNOLOGY INC, <br><br>Plaintiff,<br><br>v.<br><br>POLAR ELECTRO INC,<br><br>Defendant. | No. C -12-02234 EDL <br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This patent infringement case involves United States Patent 5,058,427 ("the '427 patent") entitled Accumulating Altimeter with Ascent/Descent Accumulation Thresholds. The '427 patent issued to Plaintiff on October 22, 1991 and expired on September 28, 2010. The technology at issue is used primarily in sports accessories. Plaintiff filed an initial complaint against Defendant on August 28, 2011, which was dismissed and re-filed as this case on May 4, 2012.

Before the Court is Defendant's Motion for Summary Judgment based on laches.[1] On April 2, 2013, the Court held a hearing on Defendant's Motion. For the reasons stated in this Order, Defendant's Motion for Summary Judgment is granted.

**Facts**

In October 1994, Plaintiff met with representatives from Polar Electro Oy, Defendant's

---

[1] Plaintiff has filed objections to some of the evidence presented by Defendant in support of its Motion for Summary Judgment. The Court has reviewed those objections and overrules them. Defendant objected to a portion of the Hoffacker declaration as barred by judicial estoppel. Defendant has not made a sufficient showing for judicial estoppel because, at a minimum, it has not shown that this Court, or any other court, has accepted and relied on Plaintiff's prior statement. See New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (stating that the Supreme Court has established certain factors that district courts may take into consideration when deciding whether judicial estoppel is appropriate in a given case: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the first tribunal accepted and relied upon the prior inconsistent position; and (3) the party maintaining the inconsistent position stands to gain an unfair advantage over the opposing party). Therefore, Defendant's objection is overruled.

parent company, to discuss a possible partnership. Moran Decl. Ex. 2 at 15-16; Ex. 3; Hoffacker Decl. ¶ 8. Plaintiff was interested in, among other things, expanding the market for its premier product, the Vertech, by "incorporating [Polar Electro Oy's] heart rate technology." Moran Decl. Ex. 3 at 8. Shortly after the meeting, on October 31, 1994, Plaintiff wrote a letter to Tony Harmon at Polar CIC, Inc. that stated in part: "Although these two missions [of Plaintiff and Polar Electro Oy] do have some overlap, it appears that the segments of cooperation that were discussed are not necessarily in conflict unless we both decide to develop our own technology to compete directly." Moran Decl. Ex. 3. In March 1995, Plaintiff wrote another letter to Mr. Harmon, now with Defendant Polar Electro Inc., responding to Mr. Harmon's letter regarding distribution in the United States, and providing additional information about Plaintiff for purposes of forming a business arrangement between the two companies. Moran Decl. Ex. 3.

One of Defendant's products, the XTrainer, was publicized as being available for $289 in Triathlete magazine in November 1996, and was featured in an article for new bicycle products. Moran Decl. Ex. 1. A bicycle seat from Plaintiff and Defendant's XTrainer were featured in the same issue of the Triathlete magazine. Moran Decl. Ex. 1. The XTrainer included an accumulating altimeter feature that required a separate altitude sensor. Moran Decl. Ex. 6 at PEI000506; Ex. 6 at PEI000499, Ex. 7 at PEI000598-99. Plaintiff's president agreed that the XTrainer was a two piece device, but stated his view that the XTrainer did not have an altimeter as contemplated by the '427 patent. Hoffacker Decl. ¶ 2.

Over the next fifteen years, Defendant introduced, marketed and sold all fourteen of the accused products. Confidential Moran Decl. Ex. C1. For example, Defendant's sales records show actual sales of the accused AXN300 and AXN500 products at least as early as August 2004, and actual sales of the accused AXN700 product at least as early as September 2004. Confidential Moran Decl. Ex. C-1; C-2. The AXN300, AXN500 and AXN700 have been openly advertised on Defendant's website at least as early as August 2004. Moran Decl. Ex. 5. From 2004 through the filing of the complaint in 2011, Defendant invested millions of dollars in marketing the accused products, and the sales of the accused products grew from zero to millions of dollars. Confidential Moran Decl. Ex. C-1, C-5.

2

**Legal Standard**

Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading;" rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

**Discussion**

A defendant in a suit for patent infringement may raise a defense of laches when the plaintiff has acted with "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1029-30 (Fed. Cir.

3

1992). In order to invoke a defense of laches, "a defendant has the burden to prove two factors:

> 1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and
> 2. the delay operated to the prejudice or injury of the defendant."

Id. at 1032; see also Hearing Components, Inc. v. Shure, Inc., 600 F.3d 1357, 1375 (Fed. Cir. 2010). Laches limits the scope of damages a court will consider. In patent infringement actions, laches bars recovery of damages plaintiff might have suffered before initiating litigation, but does not bar prospective relief. See A.C. Aukerman, 960 F.2d at 1040.

"The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit," but does not begin to run before the patent is issued. A.C. Aukerman, 960 F.2d at 1032. When evaluating a defendant's laches defense, a court must consider the particular facts and circumstances of the case at hand and "weigh the equities of the parties." Id. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." Id. (citations omitted).

Under the second prong of the test for laches, prejudice to the defendant may be either economic or evidentiary. Economic prejudice consists of damages or the loss of monetary investments which likely would have been prevented by earlier suit. See A.C. Aukerman, 960 F.2d at 1033. Evidentiary prejudice consists of harm to the defendant's ability to present a full and fair defense on the merits by reason of loss of records, the death of witnesses, or the fading of memories. See id. at 1033.

However, a delay of at least six years before bringing suit raises a presumption as to both elements of a laches defense, that is, that the delay was both unreasonable and prejudicial to the defendant. Adelberg Lab., Inc. v. Miles, Inc., 921 F.2d 1267, 1271 (Fed. Cir. 1990); see also A.C. Aukerman, 960 F.2d at 1035-36 ("In sum, we conclude that the presumption of laches based on the relevant six-year period, previously adopted in our precedent, should be maintained. Prima facie, the underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than six years after actual or constructive knowledge of the defendant's alleged infringing activity."). When the presumption arises, the burden shifts to the plaintiff. The plaintiff may rebut

4

1 the presumption of laches by offering evidence showing a genuine issue of fact as to whether the
2 delay was reasonable or caused defendant material prejudice. See A.C. Aukerman, 960 F.2d at
3 1038. Such evidence need not be persuasive, since the burden of persuasion remains with the
4 defendant at all times. See id. at 1036-37. Once the presumption is burst, the defendant must
5 affirmatively prove both elements of laches. A.C. Aukerman, 960 F.2d at 1032.

**1.	The presumption of laches arises in this case.**

In determining whether the presumption of laches applies, the Court must first determine the date on which "plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." A.C. Aukerman, 960 F.2d at 1032. "[A] delay of more than six years after the omitted inventor knew or should have known of the issuance of the patent will produce a rebuttable presumption of laches." Serdarevic v. Advanced Med. Optics, Inc., 532 F.3d 1352, 1358 (Fed. Cir. 2008) (quoting Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1163 (Fed. Cir. 1993)). If the presumption applies, unreasonable delay and prejudice are automatically inferred. Serdarevic, 532 F.3d at 1359; see also Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996). Once a defendant establishes a presumption of laches on summary judgment, the burden shifts to the plaintiff to "rebut the presumption of laches 'by offering evidence to show an excuse for the delay or that the delay was reasonable' or by offering evidence 'sufficient to place the matters of [evidentiary] prejudice and economic prejudice genuinely in issue.'" Serdarevic, 532 F.3d at 1359-60 (quoting A.C. Aukerman, 960 F.2d at 1038). "If the [plaintiff] presents a sufficiency of evidence which, if believed, would preclude a directed finding in favor of the [defendant], the presumption evaporates and the accused . . . is left to its proof." A.C. Aukerman, 960 F.2d at 1037-38.

Here, Defendant argues that laches is presumed because Plaintiff knew or should have known of the alleged infringing activity as early as 1994 and no later than 2004, which was more than six years before it filed this lawsuit. First, Defendant points to the 1994 meeting that Plaintiff had with Defendant's parent company, Polar Electro Oy, and argues that Plaintiff had constructive knowledge of the potential infringement at that time. It is undisputed that at that meeting, Plaintiff met with Polar Electro Oy's representatives to discuss a potential partnership. Moran Decl. Ex. 2.

5

According to the evidence, the primary goal of that meeting was to incorporate Polar's heart rate technology into Plaintiff's Vertech product. Moran Decl. Ex. 8 at 44-45. In a letter summarizing the meeting, Plaintiff recognized that Polar Electro Oy could develop its own technology to directly compete with Plaintiff. Moran Decl. Ex. 3 at 7. Plaintiff does not dispute this evidence. Thus, Defendant argues that as of 1994, Plaintiff understood that its commercial goals overlapped with those of Defendant and should have known of potentially infringing activity.

Defendant has failed to show undisputed facts that Plaintiff had actual or constructive knowledge as of 1994 when Plaintiff met with Defendant's parent company. Although the evidence of that meeting and the subsequent letters between the parties show that the parties discussed heart rate monitor technology, not accumulating altimeters, Plaintiff's president stated in his declaration that the parties discussed the '427 patent at the October 1994 meeting or in 1995/1996. Moran Decl. Ex. 3. Thus, taking all inferences in the light most favorable to Plaintiff, there is a triable issue of fact as to notice as of 1994 or shortly thereafter.

Second, Defendant notes that its first accumulating altimeter product was the XTrainer, which, when connected to the optional Polar altitude sensor, accumulated the distance ascended. Moran Decl. Ex. 6 at PEI000506, PEI000499l Ex. 7 at PEI000598-99. The XTrainer was openly marketed and on sale at least as early as 1996, fifteen years before Plaintiff sued Defendant. Moran Decl. Ex. 1; Ex. 7; Confidential Moran Decl. Ex. C-3, C-4. Thus, Defendant argued in the briefs that Plaintiff was on constructive notice of potential infringement as of no later than 1996. Plaintiff disputes that the XTrainer contained an infringing accumulating altimeter. Hoffacker Decl. ¶ 2. At the hearing, Defendant did not rely on the XTrainer as evidence of Plaintiff's knowledge of allegedly infringing activity. Thus, there is at least a triable issue of fact as to whether the date of the first sales of the XTrainer shows Plaintiff's knowledge.

Third, Defendant states that even if Plaintiff was not on actual notice as of 1994 or 1996 of allegedly infringing activity, it is undisputed that Defendant had been openly marketing and selling the accused products AXN300, AXN500 and AXN700 since August and September 2004, and that these products were advertised on Defendant's website as early as August 2004. Defendant argues that this activity put Plaintiff on constructive notice of Defendant's potential infringement as of 2004

6

at the latest. See Wanlass v. General Elec. Co., 148 F.3d 1334, 1338 (Fed. Cir. 1998) ("The availability of delay based on constructive knowledge of the alleged infringer's activities imposes on patentees the duty to police their rights."). Wanlass imposes a duty on patent holders to police their patent rights, which Plaintiff failed to do given Defendant's undisputed open advertising and sale of the accused products. Hoffacker states in his declaration that he lacked actual notice: "In any event, I and Avocet were never aware of any potential infringing Polar devices until the Fall of 2005 at the Interbike trade show, a trade show that I, on behalf of Avocet, regularly attend." Hoffacker Decl. ¶ 2 (emphasis in original). Plaintiff, however, does not dispute Defendant's open and notorious marketing and sales as of August 2004.

Based on the undisputed facts, Plaintiff was, at a minimum, on constructive notice of allegedly infringing activity as of August 2004 when Defendant began openly marketing and selling the accused products. Plaintiff should have been monitoring developments in this field. See Wanlass, 148 F.3d at 1338-39 (". . . Although laches will not bar a patentee whose ignorance is justifiable, ignorance will not insulate him from constructive knowledge of infringement in appropriate circumstances. These circumstances include 'pervasive, open, and notorious activities' that a reasonable patentee would suspect were infringing. Furthermore, constructive knowledge of the infringement may be imputed to the patentee even where he has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor. The patentee who is negligently or willfully oblivious to these types of activities cannot later claim his lack of knowledge as justification for escaping the application of laches . . . The Supreme Court has consistently imputed to parties who failed to examine readily available information the knowledge contained in it and the results of inquiries that the knowledge would have motivated a reasonable man to conduct.") (internal citations omitted). The Wanlass court concluded:

> Open and notorious potentially infringing conduct gives patentees the opportunity to recover damages based on their exclusive rights. Therefore, a reasonable patentee, motivated by his interest in recovering for and preventing infringement, keeps abreast of the activities of those in his field of endeavor. Allocating the burden to patentees to seek out infringers is proper, furthermore, because compared to potential infringers, they are in the best position to know the scope of their patent protection and, therefore, also to know likely places to find infringement. This superior knowledge generally allows them to incur comparatively lower costs in investigating potentially

7

infringing activities than competitors would incur conducting patent searches on every aspect of their products and notifying the patentee of their results.

Wanlass, 148 F.3d at 1339.

Thus, given the undisputed evidence of Defendant's open marketing and sales of the accused products in 2004, at a minimum, Plaintiff had constructive notice as of that time in light of the duty to monitor developments in the field. Plaintiff did not file its action against Defendant until August 2011. Accordingly, the presumption of laches arises.

**2. Plaintiff has failed to raise a triable issue of fact that its delay in bringing suit was excusable or that Defendant did not suffer prejudice.**

**A. Delay**

Courts have typically found a period of delay "unreasonable" when it exceeds six years. See, e.g., Adelberg, 921 F.2d at 1271 (eleven years of delay found to be unreasonable); Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1336-37 (Fed. Cir. 1998) (more than six years' delay unreasonable). A shorter delay was not unreasonable when that delay was occasioned by explainable conduct on the part of the plaintiff, that is, "negotiating with his attorney, negotiating with other parties for licenses." Meyers v. Asics Corp., 974 F.2d 1304, 1307 (Fed. Cir. 1992) (four years of delay found to be reasonable); see also, e.g., MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1572 (Fed.Cir.1989) (plaintiff told defendant "that possessing some right to the patent was unimportant to him").

Here, Plaintiff argues that any delay was reasonable for three reasons: (1) Plaintiff was engaged in other pending litigation; (2) Plaintiff lacked funds to sue Defendant; and (3) Defendant intentionally infringed. First, Plaintiff argues that it was involved in patent litigation during at least some of the time between 2004 and 2011, so it could not pursue litigation against Defendant. From 2003 to early 2004 and 2008 through April 2011, Plaintiff was involved in two cases of patent litigation in this district. Hoffacker Decl. ¶¶ 4, 6. In order for pending litigation to be a valid excuse for delay, there must be adequate notice to the potential infringer of the other proceeding. See, e.g., Hottel Corp. v. Seaman Corp., 833 F.2d 1570, 1573 (Fed. Cir. 1987) (" For other litigation to excuse a delay in bringing suit there must be adequate notice of the proceeding. The notice must inform the alleged infringer of the other proceeding and of the patentee's intention to enforce its patent upon

1  completion of that proceeding.") (internal citation omitted); Carpet Seaming Tape Licensing Corp.
2  v. Best Seam Inc., 694 F.2d 570, 580 (9th Cir. 1982) (". . . and the patentee may not rely on other
3  litigation as an excuse for the delay in the absence of notice to the alleged infringers that the
4  patentee was delaying enforcement of the patent until conclusion of the pending litigation."); see
5  also Vaupel Textilimaschinen KG v. Meccanica Euro Italia SPA, 944 F.2d 870, 877 (Fed. Cir. 1991)
6  ("Our decision in Hottel does not require that notice of other litigation and of a patentee's intent to
7  sue after that other litigation is terminated be expressly stated in writing. What is important is
8  whether MEI had reason to believe it was likely to be sued.").

9      Here, Defendant states that it did not know of the '427 patent until it was served with this
10 lawsuit, and Plaintiff cites no evidence to the contrary. Supp. Moran Decl. Ex. 16. Although
11 Plaintiff's president states that Defendant knew of the '427 patent because it was discussed at the
12 1994 meeting (Hoffacker Decl. ¶ 8), it is undisputed that Defendant itself was not present at the
13 hearing and only its parent company, Polar Electro Oy, was present. Plaintiff has presented no
14 evidence to raise a triable issue of fact that it advised Defendant of the pending litigation at any time
15 from 2003 through 2011, or that Defendant was otherwise on notice of it from its parent company or
16 any other source. See DC Comics, Inc. v. Powers, 482 F. Supp. 494, 496-97 (S.D. N.Y. 1979)
17 (stating in a trademark infringement case that ". . . (b)efore a parent's knowledge will be imputed to
18 its subsidiary, it must be shown that the parent's employees informed of the infringement were under
19 a duty to report that information to the subsidiary.") (internal citation omitted). Therefore,
20 Plaintiff's pending litigation does not excuse its delay.

21     Second, Plaintiff argues that it could not afford to litigate against Defendant until 2011 when
22 the lawsuit with a third party, Suunto, was completed by settlement, so its delay was excusable.
23 Hoffacker Decl. ¶¶ 6, 7. Plaintiff, however, has cited no authority holding that the inability to afford
24 litigation excuses delay in filing, and the caselaw is to the contrary. See Hall v. Aqua Queen
25 Manuf., Inc., 93 F.3d 1548, 1554 (Fed. Cir. 1996) ("The Supreme Court made clear long ago that
26 poverty, by itself, is never an excuse for laches purposes. Aukerman is not-indeed, *cannot* be-to the
27 contrary.") (internal citation omitted, emphasis in original); cf. Petrella v. Metro-Goldwyn-Mayer,
28 Inc., 695 F.3d 946, 953 (9th Cir. 2012) (in copyright infringement case, lack of funds to pay for

9

1  litigation does not excuse delay). Therefore, Plaintiff's lack of funds does not excuse its delay.

2  Third, Plaintiff argues that because Defendant intentionally and knowingly infringed
Plaintiff's patents, the Court must reject the laches defense. Plaintiff has cited no authority for this argument, nor has it provided any evidence of Defendant's intent or knowledge. Although Plaintiff's president stated in his declaration that the '427 patent was discussed at the October 1994 meeting, that discussion does not raise a triable issue of fact that Defendant, which is an entity that did not attend the meeting, intentionally and knowingly infringed ten years later. The only Polar representatives at that October 1994 meeting appear to have been from Defendant's parent company, Polar Electro Oy, in Finland. Moran Decl. Ex. 3. See DC Comics, Inc., 482 F. Supp. at 496-97. There is no mention of the '427 patent in the meeting agenda or the subsequent correspondence, and there is no indication that the parties to that meeting discussed the patent. Id. Thus, Plaintiff has not raised a triable issue of fact as to whether its delay was excusable.

**B. Prejudice**

Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary. Cornetta v. United States, 851 F.2d 1372, 1378 (Fed. Cir. 1988).

**i. Evidentiary prejudice**

Evidentiary, or "defense" prejudice, "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." A.C. Aukerman, 960 F.2d at 1033 (citing Barrois v. Nelda Faye, Inc., 597 F.2d 881, 885 (5th Cir.1979); Smith v. Sinclair Ref. Co., 257 F.2d 328, 330, 118 USPQ 183, 184 (2d Cir.1958); Gillons v. Shell Co., 86 F.2d 600, 608-09, 32 USPQ 1, 9-10 (9th Cir.1936), cert. denied, 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937); VI Restatement Law of Torts § 939 (1936)).

Defendant argues that it has suffered evidentiary prejudice because in 2007, Defendant changed computer systems and as a result, Defendant has been unable to retrieve documents regarding, for example, trade show expenses prior to 2006. See Supp. Moran Decl. Ex. 19 (testimony from Defendant's witness pursuant to Federal Rule of Civil Procedure 30(b)(6): Q: "Did

1 she report back to you that – why she wasn't able to find listing for some products – or I would say –
2 maybe not listing, but information?" A: "The data was too old and doesn't exist anymore, if she had
3 it to begin with."). Defendant argues that these documents would support proof of evidentiary
4 prejudice because they may show that Defendant exhibited the XTrainer at trade shows attended by
5 Plaintiff. Although the XTrainer is not an accused product, it is similar enough to Plaintiff's product
6 that the inability to obtain documents about it would be prejudicial. Plaintiff has not raised a triable
7 issue of fact that the prejudice would not be material.

### ii. Economic prejudice

Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages that likely would have been prevented by earlier suit. A.C. Aukerman, 960 F.2d at 1033 (citing A.C. Aukerman Co. v. Miller Formless Co., 693 F.2d at 701; American Home Prods. v. Lockwood Mfg. Co., 483 F.2d 1120, 1124 (6th Cir. 1973), cert. denied, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974); Yates v. Smith, 271 F. 27, 31 (D.N.J.1920)). Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. A.C. Aukerman, 960 F.3d at 1033 (citing Jenn-Air Corp. v. Penn Ventilator Co., 464 F.2d 48, 49-50 (3d Cir.1972)). Instead, courts must look for a change in the economic position of the alleged infringer during the period of delay. Id. (citing Lake Caryonah Improvement Assoc. v. Pulte Home Corp., 903 F.2d 505, 510 (7th Cir.1990)). On the other hand, a patentee may not intentionally lie silently in wait watching damages escalate, particularly where an infringer, if he had had notice, could have switched to a noninfringing product. Id. (citing Rome Grader & Mach. v. J.D. Adams Mfg. Co., 135 F.2d 617, 619, 57 USPQ 442, 444 (7th Cir.1943)).

Defendant argues that it has suffered economic prejudice because beginning in 1996 with the introduction of the Xtrainer (albeit it is not an accused product), and over the next fifteen years, Defendant introduced, marketed and sold all fourteen of the accused products, yet Plaintiff remained silent and did not raise infringement allegations. See A.C. Aukerman, 960 F.2d at 1033 ("Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit."). It is undisputed that during that time, Defendant spent millions of dollars in marketing. Confidential

11

1  Moran Decl. Ex. C-5.  It is also undisputed that beginning with the sales of some of the accused
2  products (AXN300, AXN500 and AXN700) through the filing of the complaint, Defendant's sales
3  of the products went from zero to tens of millions of dollars.  Confidential Moran Decl. Ex. C-1.
4  During that time, it is undisputed that Defendant introduced eleven more products with an
5  accumulating altitude feature.  Id.  Defendant also argues that had Plaintiff not slept on its rights,
6  Defendant would have had a chance to address any alleged infringement years ago, before incurring
7  these expenses, because it is undisputed that Defendant's regular practice is to refer issues of
8  infringement to counsel.  Moran Decl. Ex. 9 at 48.

Plaintiff, however, argues that there has been no showing of economic prejudice, primarily based on the testimony of Defendant's Federal Rule of Civil Procedure 30(b)(6) witness who testified that he was not aware of any specific investments made by the company over the last ten years that resulted from any alleged lack of knowledge of the '427 patent.  Schmid Decl. Ex. 2 at 59.  Plaintiff argues that because Defendant cannot attribute any specific expenses to the delay, there is no prejudice, citing Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1293-94 (Fed. Cir. 1992).  In Hemstreet, the court stated:

> However, we note that the record reflects that CES had expenditures of over $23 million on research and development, $6.5 million on direct marketing costs, and $20 million to expand or consolidate manufacturing facilities. 741 F.Supp. at 1313, 16 USPQ2d at 1208. But these expenditures have no explicitly proven nexus to the patentee's delay in filing suit, as Aukerman requires for a finding of prejudice. It is not enough that the alleged infringer changed his position-i.e., invested in production of the allegedly infringing device. The change must be because of and as a result of the delay, not simply a business decision to capitalize on a market opportunity. See Aukerman, 960 F.2d at 1033, 22 USPQ2d at 1329. *Further, we note that CES' prejudice argument is severely undercut by Hemstreet's provision of explicit notice of the Burroughs litigation and implicit suggestion that CES would soon face litigation if it refused to license.*

Hemstreet, 972 F.2d at 1293-94 (emphasis added).  Hemstreet is distinguishable.  There, the plaintiff expressly warned the defendant of the litigation that the plaintiff was then pursuing against other alleged infringers, implying that it would be next, and the defendant made a deliberate business decision to ignore that warning and proceed as if nothing had occurred, severely undermining its laches defense.  See Hemstreet, 972 F.2d at 1294.  Here, there is no evidence that Plaintiff gave Defendant any indication that Plaintiff was pursuing other litigation based on the patent or that

12

Plaintiff intended to eventually sue Defendant for infringement.

At the hearing, Defendant argued that this case is similar to Kane v. Delong, C-12-5437 EMC (N.D. Cal. March 19, 2013) in which the court concluded that the facts alleged were sufficient to defeat a motion to dismiss in that case. There, factors supporting the court's conclusion included that the defendants were already selling the accused product prior to the plaintiff obtaining the patent, the defendants sold more products to a wider market due to the plaintiff's silence about the patent so that it would be reasonably inferred that sales increased rather than stayed constant because of plaintiff's conduct, and the defendants "forewent legal action during the period of time within the statute of limitations for claims that could have pursued" against the plaintiff. The facts of Kane are similar to this case. Although there is no evidence that Defendant intended to bring a counterclaim against Plaintiff or was foreclosed from doing so, the undisputed evidence is that Defendant increased the number of products it manufactured, and increased its marketing and sales to millions of dollars during the relevant time. Also, it is undisputed that Defendant's practice was to refer any allegations of infringement to counsel, showing that if Defendant had notice, it could have chosen not to expand the allegedly infringing product line and sales, at least without redesigning the product to work around the patent if counsel advised that it would be prudent to do so. Plaintiff has presented no evidence to the contrary. Plaintiff has not raised a triable issue of fact that Defendant had notice of any intent by Plaintiff to pursue litigation against Defendant, and therefore, Plaintiff has not raised a triable issue of fact that Defendant did not suffer prejudice.

**Conclusion**

The presumption of laches applies here, and the undisputed facts establish that Plaintiff's delay in bringing this action was not excusable and that Defendant suffered prejudice by the delay. Accordingly, Defendant's motion for summary judgment is granted. No later than April 17, 2013, the parties shall file a joint statement setting out what issues, if any, are left for trial in this case.

IT IS SO ORDERED.

Dated: April 16, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge